MAURICE WOLF, Plaintiff and Appellee, *v.* NECKWEAR CORPORATION OF PUERTO RICO, Defendant and Appellant.

No. 12146.   Submitted June 19, 1958.—Decided June 26, 1958.

*Gregorio Lacot Salgado* for appellant. *Juan L. Cruz Rosario* for appellee.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

This is an action for discharge without just cause. On the basis of the evidence introduced at the trial, the lower court made the following findings: (1) the defendant-appellant engaged the services of plaintiff-appellee as production manager under a contract without a definite term, at the rate of $100 weekly; (2) under the terms of that contract, the plaintiff-appellee rendered services to the defendant-appellant from May 2, 1955 to August 8, 1955; (3) on July 1, 1955, the general manager of the defendant-appellant left for the United States, and during his absence the plaintiff-appellee made a duplicate key of the office without the express authorization of the general manager; (4) this action on the part of the plaintiff-appellee was due to the fact that during the absence of the general manager he needed to use the office on Saturdays in order to handle the New York mail; (5) the plaintiff-appellee returned the duplicate key to the office shortly after the manager required him to do so; (6) during the time the plaintiff-appellee kept the duplicate key nothing was missing in the factory, nor was any act performed to the detriment of the defendant; (7) on August 8, 1955, the defendant-appellant discharged the plaintiff-appellee alleging specifically that he had made a duplicate key to the office without the authorization of his superiors.

As a conclusion of law, the Superior Court determined that the discharge of the plaintiff-appellee was without just cause, and that the one-year probationary period provided in the contract for services did not convert the contract into one for a definite term. It rendered judgment directing the appellant herein to pay to the plaintiff the sum of $400 as

monthly pay, a like sum as penalty, and $350 for attorney's fees.

■■ Three errors are assigned on appeal. In the first error it is alleged that § 1 of Act No. 50 of April 20, 1949 (Sess. Laws, p. 126, 29 L.P.R.A. § 183), which establishes the right to receive as indemnity one month's salary whenever the employer discharges, without just cause, an employee who has been hired under a contract without a definite term, does not apply to the case at bar. The appellant maintains that the labor contract provided for a probationary period of one year, *and that, therefore, such contract was for a definite term.* The appellant is not right. Evidently, the clause of the probationary period does not mean that the duration of the contract would be one year. It did not fix the term of duration of the contract. Moreover, an employer can not evade the legal provision of monthly pay by including in the contract a clause which gives him the right to discharge an employee at any time and without just cause *if the labor contract is without a definite term.* This is expressly provided by the law in force: "If it is stipulated in a labor contract that the workman or employee authorizes his employer to discharge him at any time without previous notice and without just cause, and that said workman or employee agrees to waive any right, benefit, and/or additional compensation that may belong to him in accordance with the laws of Puerto Rico by reason of said discharge, such contract shall be null in so far as said stipulation is concerned." Section 2 of Act No. 17 of April 5, 1937 (Sess. Laws, p. 139, 29 L.P.R.A. § 181).

■ On the other hand, it is incumbent on the lower court to determine, after considering the facts and special circumstances of each case, whether or not there was just cause for discharging the employee. We believe that in the case at bar we will not disturb the finding of the trial court that the employer dispensed with the services of the plaintiff-

appellee without any reason or just cause. There was no showing of disloyalty or disobedience of the employer's rules and orders, nor of dishonesty, incompetency, or negligence on the part of the employee. *Cf. Mercedes Bus Line, Inc.* v. *District Court*, 70 P.R.R. 656 (1949); *Blanes* v. *District Court*, 69 P.R.R. 106 (1948). The fact alone that he had a duplicate key made to enter into the office, under the circumstances pointed out, does not constitute just cause for his discharge. This action on the part of the employee was not for his own benefit but for a speedy and better performance of the work entrusted to him. He had never been forbidden to make a duplicate key to the office although he had not been authorized to do so. The employee returned it as soon as he was required to do so, and the employer suffered no prejudice at all. The employee's conduct would have justified, at the most, an admonition but not his discharge.

We believe that in Puerto Rico, under the provisions of monthly pay contained in § 1 *supra* of Act No. 50 of April 20, 1949 (29 L.P.R.A. § 183), the mere lack of confidence of an employer in an employee does not warrant his discharge. We therefore overrule now the dictum in *Mercedes Bus Line* v. *District Court, supra* at p. 661, that *"the lack of confidence in [the employee] is . . . just cause [for the discharge]."* That dictum is based on the rule which prevailed in Spain, according to Manresa, *by express provision of § 21 of the Spanish Labor Code.* See 10 Manresa, *Comentarios al Código Civil Español* 668, 4th ed.; *P. R. Cap and Tires Sales* v. *District Court*, 68 P.R.R. 370, 373 (1948). There is no such statutory provision in Puerto Rico. Moreover, if the employer's lack of confidence in the employee were a just cause for the latter's discharge, the protection granted by the legal provision of monthly pay would be practically illusory. *Cf.* 31 L.P.R.A. § 3373 (§ 1208 of the Civil Code). Naturally, an employee may fail in his duties by violating the employer's rules and orders, thereby show-

ing negligence, incompetency, or inefficiency in his work, or committing fraud, serious disloyalty, or dishonesty, etc., and those objective facts could arouse in the employer's mind a "lack of confidence." But in that case, if all the circumstances show that there is just cause for the discharge, then it is not a question of the employer's mere subjective attitude. Furthermore, we are not concerned here with the very special contract of general agency, as defined by our Civil Code. See §§ 1600–08, 31 L.P.R.A. §§ 4421–29.

According to the original text of the Spanish Labor Code of 1926, to which Manresa refers: "The following shall be deemed just causes in favor of the employer to terminate the contract before expiration of the term: 1. The recurrent violation of the terms of the contract. 2. *Lack of due confidence in the activities or in the type of work performed by the laborer.* 3. Discourteous behavior or serious disrespect and want of consideration on the part of the employee toward the employer, his family, or his representative, and his fellow workers." (Sec. 21.) (Italics ours.) See Labor Code, p. 19 (2d ed., Reus, 1949). However, since 1931 the second subdivision above copied was eliminated in Spain. *Ibid.*, appendix II, p. 272. In other words, since that date and up to the present time the employer's lack of confidence in the activities or in the work performed by the laborer does not warrant discharge, under the Spanish legislation. The term "just cause for the discharge" is at present defined in § 77 of the Spanish Labor Contract Act. It reads: ". . . shall be deemed to be just causes for the discharge: (*a*) recurrent and unjustified violations of punctuality or attendance at work; (*b*) indiscipline or disobedience of the labor regulations adopted in pursuance of law; (*c*) discourteous conduct by word of mouth or deed, or serious want of respect and consideration toward the employer, the members of his family who live with him, his representatives, or the superiors or fellow workers; (d) the incompetency of the

laborer to perform the duties or work for which he was hired; (*e*) fraud, disloyalty, or betrayal of confidence in the activities entrusted to him; (*f*) wilful and continuous diminution of the normal amount of work performed; (*g*) to engage in commercial or industrial operations on his own account or for another person without the employer's authorization; (*h*) habitual drunkenness; (*i*) lack of cleanliness, provided the laborer's attention has been called time and again and to such a point as to give rise to justified complaint on the part of his fellow workers within the same premises; (*j*) when the laborer frequently causes unjustified quarrels and feuds with his fellow workers." See Medina y Marañón, *Leyes Sociales de España* 82–97 (1951). It is to be noted that, through the National Labor Regulations to which paragraph (*b*) refers, the reasons for terminating a labor contract may be enlarged at one's fancy. That is why the causes listed in § 77 *supra* are express only in theory. Yet, the term just cause for discharge under the Spanish law has been elaboratedly treated from jurisprudential and doctrinal point of view greatly favoring the laborer. See Carro Igelmo, *El Despido Justo—Doctrina, Legislación, Jurisprudencia* (1957). The Spanish labor contract legislation has been taken mostly from the French law, which is a model of social legislation for the other European countries. See Dalloz, *Code du Travail* (24th ed. 1949); Durand y Vitu, *Traité du Droit du Travail* (1947–56); Waline *et al.*, *Legislation Sociale Appliquée* (1943). In Puerto Rico, our law contains only the elastic and indefinite term of "just cause," without enumerating the causes for just discharge. This approach to the problem is more appropriate to the basic ideas of freedom of organization, free collective bargaining between employers and unions, and to the role which labor unions play in our society. *Cf.* Laski, *Trade Unions in the New Society* (1950). It is in the collective bargaining agreements where the just causes for discharge of the laborers are often defined. As a rule, in

practice the unions and the employers prefer to maintain an indeterminate and flexible notion of "just cause" for discharge and to submit to arbitration each specific case where there is a discrepancy. Naturally, in those collective labor agreements the absence of just cause gives the right to reinstatement and to the payment of back wages, and the question is not, therefore, a simple question of monthly pay, as is the case under Act No. 50 of April 20, 1949 (29 L.P.R.A. § 183).

█ The second assignment of error refers to the award of the additional penalty imposed by the trial court. The plaintiff-appellee acquiesces in this assignment. In fact, there is no legal provision whatever permitting the imposition of a penalty in addition to the payment of the monthly pay under the circumstances of the case at bar.

██ The third assignment challenges the award of $350 for attorney's fees to plaintiff. The trial court always has ample discretion to determine whether the losing party was obstinate, and also to fix the amount of the fees according to the degree of obstinacy and the value of the attorney's services. There is nothing in this case to show abuse of that discretion. Consequently, this error is without merit. See *Géigel* v. *Ramos*, 79 P.R.R. 812 (1957); *Ochoa* v. *Cía. Ron Carioca*, 79 P.R.R. 810 (1957); *Martín* v. *Torres*, 79 P.R.R. 370 (1956); *Torres* v. *Biaggi*, 72 P.R.R. 813, 820 (1951); and cases therein cited.

The judgment appealed from will be modified in order to eliminate the $400 penalty imposed by the trial court, and, as thus modified, it will be affirmed.